IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

BERNARD MAYTON, et al.,

                      Plaintiffs,

v.                            Civil Action Number 3:05CV667

AUTO-OWNERS INSURANCE COMPANY,

                      Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Auto-Owners Insurance Company's Motion for Summary Judgment and several Motions in Limine.

### I. Background

The Plaintiffs, Bernard and Connie Mayton own land at 411 Villa Road in Claremont, Virginia. On that land, Plaintiffs owned a dwelling, another structure, and maintained personal property. The Plaintiffs had a homeowners insurance policy for a period of January 12, 2003, through January 12, 2004 with Auto-Owners Insurance Company. The policy was in effect on September 18, 2003, when during the course of Hurricane Isabel, Plaintiffs' home was severely damaged. The homeowners policy with the Defendant contained the following exclusion:

> We do not cover loss caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss:
>
> . . .
>
> 3. Water damage, meaning:
> a. flood, surface water, waves, tidal water or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind;

Def. Mot. Summ. J. Exh. A-1[Form 17603 (9-85) Homeowners Policy Special Form 3 Page 10]. The Maytons timely submitted their claim to Auto-Owners in the form of a proof of loss under the insurance policy. Auto-Owners refused to pay the claim, citing the exclusion in the policy.

Defendant claims Plaintiffs' cottage sustained damage and/or destruction directly or indirectly, concurrently, or in some sequence by waves, tidal water, and overflow of the James River. Plaintiffs contend there is a genuine issue of material fact whether the "cause and/or origin" of the damage to the house was a result of wind, water, or a combination of both.

Plaintiffs filed a breach of contract claim (Count I) and a bad faith claim (Count II) against Defendant. In Count I, Plaintiffs claim the failure of the Defendant Auto-Owners to honor the claims of the Maytons for the loss of September 18, 2003, constitutes breach of contract by the Defendant. Plaintiffs attest they have sustained damages totaling $156,583.00.

In Count II, the Plaintiffs allege Defendant denied coverage and failed to make payments to the Plaintiffs under the policy in bad faith, and denied claims which the Defendant knew were covered by the policy. Plaintiffs allege they are entitled to an award of costs and attorneys fees plus interest pursuant to the Code of Virginia § 38.2-209 for bad faith.

## II. Defendant's Motion in Limine to Exclude Proposed Expert Opinions of Mr. Charles Townes and Mr. Joe Johnson

Defendant has moved for entry of an order excluding the proposed opinions of Plaintiffs' experts Mr. Charles Townes and Mr. Joe Johnson on the grounds that their expected opinions are not based upon sufficient facts or data, nor is their testimony the product of reliable principles and methods, all in violation of Federal Rule of Civil Procedure 702.

Generally, Fed. R. Evid. 702 provides the standard for admission of expert testimony. The Rule states that an expert's opinion must be based on facts established by independent evidence properly introduced, and that expert testimony must be both reliable and helpful to the jury as a predicate for admissibility.

**A.     Mr. Joe Johnson**

Mr. Johnson is an independent insurance adjuster who was initially hired by Defendant Auto-Owners to conduct an investigation after the Hurricane. Plaintiffs intend to call him to testify at trial. Mr. Johnson opines that winds and/or tornado(s) preceded any storm surge, did not occur concurrently with them, and totally destroyed the Maytons' structure. Defendant claims that Mr. Johnson's opinions are unsupportable or based on false or incorrect assumptions or facts.

As examples, Defendant asserts Mr. Johnson conceded in his deposition that he had no evidence to support the occurrence of a tornado. He also opines that water would have to raise to roof level in order to lift house due to buoyancy. Defendant asserts Mr. Johnson is not qualified by training or experience to offer such an opinion, since he is not an engineer and took one mechanical engineering course over thirty (30) years ago. Mr. Johnson testified that he had received training in the types of damage one might expect to see with various increasing wind levels in 1997, but was unable to remember any part of it. He opined that he had never seen a house which had been destroyed by wave action, and assumed that it would not be likely to happen along the James River. In discussing his scientific approach to his evaluations, Mr. Johnson stated, "I don't take a lot of, you know, data sometimes into consideration. If I know the cause was present, and in my opinion that is what did the damage, then I leave it just that simple." Johnson Dep. at 115. Further, Mr.

Johnson acknowledged that if he had any questions about the cause of damage to a structure to be expected from various wind speeds he would consult with a professional engineer.

Mr. Johnson's proposed opinions are not the product of reliable principles and methods and are in violation of Fed. R. Evid. 702.  Mr. Johnson's opinions regarding wind and the storm surge are unsupported by his training and education.  They amount to only guesswork and speculation.  Accordingly, Defendant's Motion to Exclude the Expert Testimony of Mr. Joe Johnson is hereby GRANTED.

**B.     Mr. Charles Townes**

Defendant claims that as a professional engineer, Mr. Townes proffers broad conclusions based on incorrect, misunderstood facts, observations based on what Defendant deems are physically impossible assumptions.

Mr. Townes seeks to offer the opinion that the wind came before the high water and waves, therefore the wind caused damage to the house.  Defendant takes specific issue with Mr. Townes's contention that the wind hit the sliding glass doors in Plaintiffs' house either head-on, or from a slight angle.  Mr. Townes further concluded that the 80–90 mph winds blew from the opposite direction claimed by the National Weather Survey and other evidence.

According to Defendant, Mr. Townes has corrected his initial opinion of the direction of the wind damage on the house.  Plaintiffs are permitted to supplement report pursuant to Fed. R. Civ. P. 26(e)(1) ("A party is under a duty to supplement at appropriate intervals its disclosures . . . if the party learns that in some material respect the information disclosed is incomplete or incorrect . . .").  Defendant's request to submit a supplement to extend the discovery period to depose Mr. Townes again and its Motion to exclude the testimony of Mr. Townes are hereby DENIED.

### III. Plaintiffs' Motion in Limine to Exclude any Reference to the Plaintiffs' Claims to Travelers Flood Insurance

Plaintiffs have filed a Motion in Limine to exclude any reference to their claims to the Travelers Flood Insurance Program for flood insurance benefits due to the destruction of their cottage on a lot adjoining the property at issue. The property which is the subject of this lawsuit, is at 411 Villa Road, Claremont, Virginia. However, Plaintiffs also own property at 399 Villa Road in Claremont, Virginia ("the 399 Cottage").

Plaintiffs believe the Defendant improperly focuses on the 399 Cottage in an attempt to avoid its obligation to cover the hurricane-related damage. Under Federal Rule of Evidence 402, evidence which is not relevant is not admissible. However, Plaintiffs' insurance claim with Travelers Flood Insurance Program is relevant as it concerns a material issue in the case, and is therefore admissible.

Further, this evidence constitutes an admission against interest by the Plaintiffs. The insurance claim on the 399 Cottage was made under oath, and therefore admissible for impeachment purposes to attack Plaintiffs' credibility. The fact that this evidence may be prejudicial as Plaintiffs contend is not an issue of admissibility. Accordingly, Plaintiffs' Motion in Limine to Exclude any Reference to the Plaintiffs' Claims to Travelers Flood Insurance is hereby DENIED.

### IV. Defendant's Motion to Compel

Defendant has informed the Court that Plaintiffs' responses to Defendant's Requests for Production of Documents is incomplete. In its Motion to Compel, dated March 20, 2006, Defendant requests Plaintiffs submit the following:

- All flood insurance documentation;

- All photographs available to plaintiffs showing the condition of either or both cottages in Claremont prior to the subject hurricane;
- Copies of invoices, receipts, or other documentary or photographic or electronic evidence regarding the contents claim of the subject suit;
- Copies of invoices, receipts, or other documentary or photographic or electronic evidence regarding the dwelling claim of the subject suit;
- All photographic, diagrammatic, elevations or other documents depicting the location, elevation, and relationship to other structures of the premises owned by the Plaintiffs at Lots #7 and #8 in Claremont Beach;
- Copies of construction drawings, plans, elevations, or related documents for either property at Lots #7 and #8 in Claremont Beach.

The above information is relevant and material, and to the extent it has not been provided to Defendant, Defendant's Motion is GRANTED, and Plaintiffs' are directed to provide responsive materials to Defendant.

Defendant has also requested copies of joint and/or separate federal income tax returns of the Plaintiffs for the calendar years 2000, 2001, 2002, and 2003. This request is not appropriate nor relevant to the legitimacy of Plaintiffs' claim for coverage. Defendant's Motion to Compel production of Plaintiffs' tax returns is DENIED. Defendant's Motion to Compel is therefore GRANTED in part and DENIED in part.

### V. Defendant's Second Motion in Limine

Defendant's have filed a Second Motion in Limine seeking to prohibit introduction of certain documents at trial.

Defendant objects to Plaintiffs' reference to tornados in various places along the James River as improper. Two of Plaintiffs' proposed witnesses hypothesize that there may have been tornados in the area around the Maytons' home. However, absent solid evidence that the damage to the Maytons' home was caused by a tornado, evidence pertaining to tornados in the vicinity is irrelevant under Federal Rules of Evidence 402 and 403.

Defendant also objects to the admission of Complaints made by other Auto-Owners customers to the Virginia Bureau of Insurance. In addition to constituting hearsay under Fed. R. Evid. 802, any complaints presented to the Virginia Bureau of Insurance are not relevant under Fed. R. Evid. 402.

Plaintiffs' reference to the value of claims handled by Auto-Owners Insurance Company in Virginia, or elsewhere arising out of Hurricane Isabel is also not relevant. Any evidence of claims distant from the subject property would lead to confusion and a waste of time for the jury under Fed. R. Evid. 403.

Defendant also objects to the admission of handwritten or typed, unsworn statements of eyewitnesses during the hurricane at issue specifically Messrs. Richardson, Gupton, Hopper and/or Matthews. These statements are inadmissible hearsay under Fed. R. Evid. 802.

Finally, any testimony from the Plaintiffs' rebuttal experts during the Plaintiffs' case in chief is inappropriate.

Accordingly, Defendant's Second Motion in Limine is GRANTED in its entirety.

### VI. Defendant's Motion for Summary Judgment

Having resolved the pending Motions in Limine, the Court now turns to Defendant's Motion for Summary Judgment.

**A.   Standard of Review**

Under Rule 56(c), a motion for summary judgment may be granted "only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Magill v. Gulf & W. Indus., Inc., 736 F.2d 976, 979 (4th Cir. 1984) (quoting Fed. R. Civ. P. 56(c)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992).  "Where . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." United States v. Lee, 943 F.2d 366, 369 (4th Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The party moving for summary judgment always bears the initial burden of informing the district court of the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Any inferences "drawn from the underlying acts contained in the materials before the trial court must be viewed in the light most favorable to the party opposing the motion." Helm v. W. Md. Ry., 838 F.2d 729, 734 (4th Cir. 1988).

For purposes of analyzing this summary judgment motion, this Court therefore must determine whether, with facts thus viewed in the light most favorable to Plaintiffs, the homeowners policy covered the damage.

**B.   Discussion**

   **1. Breach of Contract**

Plaintiffs allege Defendant wrongfully denied their claim for wind damage to their residence. As jurisdiction in this case is based on diversity of citizenship, this Court must apply the choice of

law rules of the forum state. In this case, the insurance contract between the Maytons and Auto-Owners Insurance Company was written and delivered in Virginia, and therefore Virginia substantive law is applicable. Buchanan v. Doe, 246 Va. 67, 70, 431 S.E.2d 289, 291 (1993). The Plaintiffs claim there are issues of fact regarding the cause of loss of the structure, thereby precluding summary judgment. At issue with respect to Defendant's motion for summary judgment is the exclusion section of the contract. The language of the policy clearly states it does not provide coverage for damage due to "flood, surface water, waves, tidal water or overflow of a body of water."

Plaintiffs contend it is genuinely disputed which element - wind or water caused the damage to their property. However, if the damage is caused by two causes, one of which is excluded, the law upholds the exclusion of the entire damage. In Lower Chesapeake Ass'n v. Valley Forge Ins. Co., 260 Va. 77, 532 S.E.2d 325 (2000), the Virginia Supreme Court upheld a flood exclusion very similar to the one in the present case. The Court excluded a claim for coverage, where damage caused to a Norfolk dock was caused by deterioration and wind-driven water. The distinction between Lower Chesapeake Ass'n, and the case at bar is that there, both possible causes, flood and "gradual deterioration" were excluded clauses, so the damage was indisputably not covered by the policy in question. See 260 Va. at 87, 532 S.E.2d at 331. Likewise, in Transcon. Ins. Co. v. RBMW, Inc., 262 Va. 502, 551 S.E.2d 313, (2001), the Virginia Supreme Court found that the flood exclusion was unambiguous, and that the trial court failed to look at all of the excluded clauses, especially where the insured admitted that waves did most of the damage to the property. The trial court overlooked the possibility of wave damage to the property, which also fell under exclusions to the coverage.

"Where an insured has shown that his loss occurred while an insurance policy was in force, but the insurer relies on exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case . . ." 804 F. Supp. at 818 (citing Bituminous Cas. Corp. v. Sheets, 239 Va. 332, 335, 389 S.E.2d 696, 698 (Va. 1990). Defendant provides ample evidence of a flood and waves causing water damage. Defendant submits that the Maytons received full policy limits from the National Flood Insurance Program as administered by the Travelers Flood Insurance Program. Plaintiffs allegedly filed a proof of loss claiming the total destruction of their adjacent cottage at 399 Villa Road was by flood. Although Plaintiffs seek to exclude this evidence, it is relevant to their claim, and supports the finding of flood damage to the property at issue.

Additionally, the National Weather Service at Wakefield Virginia submitted a Storm Damage Survey conducted near the location of Plaintiffs' property. The Survey stated in part:

> The [storm] surge was estimated to be between 6 and 8 feet. Claremont had a predicted high tide of 1.9 feet above mean lower low water (MLLW) at 7:08 pm on Thursday, September 18, 2003. The high tide combined with the storm surge brought water levels to between 8 and 10 feet above MLLW . . . .

See Def. Mot. Summ. J. Exh. G.

Defendant further submits that every professional engineer who either looked at the house before it was removed from the site following the hurricane, or who examined photographs of the house offered the opinion that the house floated off its foundation due to the buoyancy effects of the storm surge as reported by the National Weather Service. In a report submitted as part of the Maytons' claim, professional engineer, Mr. Randall Strawbridge reported ". . . the water helped lift the house due to buoyancy." Def. Mot. Summ. J. Exh F.

Plaintiffs' own expert, Mr. Charles Townes, testified that "wind damaged the house before the storm surge reached it, [but he agreed] that the water got high enough to float it off its foundation and move it backwards." Townes Dep. at 152. Plaintiffs' expert further states in his deposition, "if this house was not damaged by wind at all, it probably would have been damaged by water." Id. at 151.

Defendant's expert, Mr. William Klunk reported that the movement of Plaintiffs' structure "[was] the result of storm surge forces on the lower portion of the wood structure lifting and transporting the cottage from its original position." Def. Mot. Summ. J. Exh. I.

The language of the policy clearly states that it does not provide coverage for water damage, "whether or not any other cause or happening contributes concurrently or in *any* sequence to the loss." (emphasis added). Accordingly, Defendant has met the burden of proving that the exclusion applies in this case, as the water caused damage either concurrently or following any wind damage.

In their briefs, and at the hearing on this matter, Plaintiffs emphasize the wind was the origin of the damage to their house. This point is unhelpful to the Plaintiffs however, since the facts are uncontroverted that the wind preceded the water, however the eight to ten foot storm surge caused additional damage to the property. Plaintiffs rely on a neighbor, Turner Hare who submitted an affidavit stating he observed the Plaintiffs' home being blown away by the wind. He asserts, "I am positive that wind, not water, caused the damage to [their] neighbors, the Maytons' property and that the water that ultimately came was not sufficient to have done so." Mr. Hare has not been designated as an expert, and Plaintiffs may not rely on his conclusory opinion of the impact the water *may* have had on the property. Plaintiffs also rely on an affidavit of Charles E. Townes, a professional engineer who asserts the wind resulting from Hurricane Isabel, not water was the cause and origin of the

11

destruction of the Maytons' house. Pltffs' Resp. to Mot. for Summ J. Att. 2. Accepting Plaintiffs' evidence, it is still undisputed that water caused concurrent or sequential damage to the house. This damage is specifically excluded by the policy the Maytons had with the Defendant.

If the high water was sufficient in and of itself to have caused the house to float off its foundation and render it a complete loss, regardless of any preceding wind damages, Plaintiffs' claim falls within Defendant's exclusion policy, and fails as a matter of law.

**2. Plaintiffs' Bad Faith Claim**

Pursuant to Virginia Code section 38.2-209, Plaintiffs claim that Defendant has shown bad faith. Under this claim, Plaintiffs must prove that the insurer did not act in good faith in denying the coverage or refusing to make payment under the policy. Plaintiffs' claim is without merit. To support a claim for bad faith, Plaintiff must prove: 1) reasonable minds could differ in interpretation of policy provisions defining coverage and exclusion; 2) Defendant had not made reasonable investigation of facts and circumstances underlying insured's claim; 3) the evidence discovered does not reasonably support denial; 4) the insurer's refusal to pay was used merely as tool in settlement negotiations; or 5) whether the defense the insurer asserts at trial raises an issue of first impression or reasonably debatable question of law of fact. See CUNA Mut. Ins. Soc'y v. Norman, 237 Va. 33, 38, 375 S.E.2d 724, 727 (1989).

Plaintiffs generally allege there are issues of material fact about the "instructions, guidance, assistance, and thoroughness of the communications" that Plaintiffs received from the Defendant. Plaintiffs further allege Defendant's investigation was "not reasonable or objective." Instead, they claim the investigation was conducted with specific intent of suppressing the true course of events,

in order to deny Plaintiffs' claim and avoid accountability. Such general allegations do not support a claim for bad faith.

Plaintiffs first raised the issue of ambiguity in the contract provision at the hearing. However, this Court finds that the policy language is clear, and there was only one interpretation of the provisions defining coverage and exclusion. Absent specific allegations, Plaintiffs' claim for bad faith fails.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby GRANTED. Defendant's Motion in Limine to Exclude Proposed Expert Opinions of Mr. Charles Townes and Mr. Joe Johnson is GRANTED in part and DENIED in part. Defendant's Motion to Compel is hereby GRANTED in part and DENIED in part. Plaintiffs' Motion in Limine to Exclude any Reference to the Plaintiffs' Claims to Travelers Flood Insurance is hereby DENIED. Defendants' Second Motion in Limine is GRANTED. Defendant's Motion for Sanctions pursuant to Fed. R. Civ. P. 11(c) is DENIED. Each party will bear its own costs and attorneys' fees.

An Appropriate Order shall issue.

/s/ James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this   2nd   day of May 2006